## Case No. 4,467.

### EMMA SILVER MIN. CO. v. PARK et al.

[14 Blatchf. 411.] [1]

Circuit Court, S. D. New York. March 2, 1878.

Edwin W. Stoughton, for plaintiff.

Edward J. Phelps and Lucius E. Chittenden, for defendants.

WALLACE, District Judge. Preliminary to the consideration of the merits of the motion now made for a new trial, the question arises whether the proper practice has been pursued here for the purpose of a review. The trial of the action was commenced in the October term and occupied nearly four months, being protracted throughout the October term and after the February term and the April term had intervened. As soon as the verdict of the jury was rendered, the term was adjourned without day. After this, a stay of proceedings upon the verdict was granted, and, by order, the time for the plaintiff to make a case was extended. By a subsequent order, the stay was continued until the hearing and determination of a motion for a new trial. It is now insisted, on behalf of the defendant, that a motion for a new trial, upon a case, cannot be entertained after the expiration of the term at which the action was tried; that the only method of review is by a petition, after the entry of judgment; that the orders staying proceedings upon the verdict were unauthorized and of no effect; and that all the proceedings towards a review should be dismissed. I am not of this opinion, and hold that the motion is properly here and must be entertained and determined upon its merits. Whether the practice upon such a motion has been changed by section 5 of the act of congress of June 1, 1872 (17 Stat. 197, now section 914, Rev. St.), conforming the forms and modes of proceeding in civil causes, other than equity and admiralty causes, "as near as may be, to the practice, pleadings and forms and modes of proceeding existing at the time in like causes in the courts of record of the state," or remains as it was before that act, is not material. The motion is properly here under the former practice, and also under the practice of the courts of this state.

The power "to grant new trials, in cases where there has been a trial by jury, for reasons for which new trials have usually been granted in the courts of law," is expressly conferred upon the courts of the United States. Act Sept. 24, 1789, § 17; 1 Stat. 83, now section 726, Rev. St. But the procedure for a motion for a new trial has not been prescribed by any statute, except where the application is made after judgment, in which case the application is required to be made by petition. Act Sept. 24, 1789, § 18, 1 Stat. 83, now section 987, Rev. St. The courts of

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission.]

the United States had been accustomed to grant new trials according to the practice of courts of common law, prior to the enactment of the statute allowing motions to be made after judgment; and the effect of that statute was not to abridge any remedy theretofore existing, but, as theretofore such reviews could not be had after judgment generally, but only in exceptional cases, the true interpretation of the statute is, that it enlarged the existing remedy, so that, in furtherance of justice, the technical rule by which a review was precluded after judgment should no longer obtain. It would be opposed to every principle of construction, to decide that a statute which confers a new remedy, by implication abrogates a pre-existing remedy, where no language from which such intent can be plainly inferred is used. It is not to be doubted, therefore, that a motion for a new trial need not be based upon petition, except when made after judgment.

But, it is strenuously contended, that this court has no authority to permit a case to be made, or to stay proceedings upon a verdict, after the expiration of the term at which the action has been tried. The authority has been so uniformly exercised by this court, that it hardly seems necessary, at this late day, to discuss the propriety of the practice. The right to control their own process and judgments, so as to promote justice, has always been recognized as one of the inherent powers of every court of general jurisdiction, in the absence of any statutory limitation or prohibition; and the practice of granting new trials took its origin from this authority. It is a mistake to suppose that such motions could only be entertained at the term when the action was tried. According to the later common law practice, although the motion was usually made pending the four days of the rule nisi, it was also entertained for good cause after the expiration of the four days, and, if the delay was sufficiently excused, such motions were entertained at the next term, or even at subsequent terms. There was never any question of the power of the court to grant a new trial at a term other than that of the trial. As the motion could only be made before judgment, the power to stay proceedings on the verdict was necessarily included, and, in the control over their own judgments, the granting of stays upon verdicts and of motions for a new trial rested simply in judicial discretion. Originally, motions for a new trial were made on the notes of the judge who tried the cause, and out of this practice grew that of making a case; and the time for making a case was always subject to the discretion of the court, and there was never any doubt but that leave to do so could be granted after the term had expired.

As judgment has not been entered in this case, the motion is regular, and, even if it should be determined that the stay of proceedings was irregularly granted, or was granted without authority, as it was not set aside when the motion for a new trial was made, if it should now be set aside, it would not avail the plaintiff.

It is urged, that the practice relative to new trials is now regulated by the Code of Procedure of this state, by force of the act of congress of June 1st, 1872, before referred to; and that, under the Code, the motion for a new trial must be made at a special term. Conceding, for argument, this to be so, inasmuch as this case was heard by consent before the judge who tried the cause, at chambers, before the regular term, for the convenience of the counsel for the parties, it is to be considered as though made at the regular term; and I entertain no doubt, that, if made at a stated term, the motion could be entertained, and the practice would "conform, as near as may be," to that prescribed by the Code. and that all motions which, by the Code of Procedure, must be made at a special term of the state courts, may be properly made at the stated terms of the courts of the United States.

Passing now to the consideration of the motion upon its merits, the first questions to be disposed of are those arising upon the rulings at the trial, in the admission and exclusion of evidence. The defendants were permitted to show, against the objection of the plaintiff, the statements of third persons made to the defendants prior to the sale of the mine, in regard to its character and value. Under the declaration, it was essential for the plaintiff to show a fraudulent intent on the part of the defendants at the time of the sale of the mine. It was alleged, that the defendants originally purchased their interest in the mine for the purpose of a fraudulent sale; that they worked the mine to promote this scheme; and that they sold it to the plaintiff by fraud and deceit, and in consummation of their original fraudulent scheme. A large part of the evidence introduced by the plaintiff was received for the sole purpose of showing a fraudulent intent on the part of the vendors, and a part of this evidence consisted of statements made to them, or one of them, by various persons, unfavorable to the character and value of the mine. To meet this, the defendants introduced evidence consisting of the statements of various persons, whose knowledge of the property entitled them to speak with more or less weight, made to the defendants prior to the sale of the mine, relative to its character and value. The belief of the defendants was one of the vital issues of fact to be determined. It is not material how such belief originated or was induced, if it was honestly entertained. If it had been induced by the formal reports of experts employed by the defendants for the express purpose of ascertaining the character and value of the mine, it would have been entitled to more weight than when predicated upon less reliable informa-

tion, but the weight of the evidence, how far the information was influential with the defendants, was for the jury to determine, and not for the court. The inquiry related to the state of mind of the defendants, and that could only be arrived at by presenting to the jury all the information, irrespective of its source, which could reasonably have influenced the judgment of the defendants. It would have been error to exclude the evidence. Ponsony v. Debaillon, 6 Mart. (N. S.) 238.

The next ruling impugned, is the exclusion of the minutes of a meeting of the board of directors of the plaintiff, held nearly a year after the sale of the mine. It was sought, by this evidence, to charge the defendant Park with knowledge of the contents of a telegram sent to the directors by the president of the company, and w.th knowledge of the action of the directors upon the receipt of the telegram. Without discussing the relevancy of the evidence, it suffices to say, that, while Park, as a director and shareholder, was bound by the acts of his co-directors, to the same extent as if he had been present at the meeting, the entry in the minute books affords no presumption of knowledge of what transpired at a meeting held after he had left England, and where the circumstances repel all inferences of personal knowledge.

The two rulings thus adverted to are the only ones in the course of the long trial which are now pressed as erroneous. It is not claimed that any error of law was committed in the instructions to the jury, except, that, incidentally, in commenting upon the facts, certain letters written by the defendant Park to the defendant Baxter, which had been admitted as evidence in favor of Baxter, were treated by the court as evidence generally in the case, and, consequently, as evidence in favor of the defendant who wrote them. If the attention of the court had been called to this inadvertence at the time, it would have been promptly corrected, and the jury would have been advised in conformity with the ruling when the letters were received in evidence. But, treating the instruction as one which, though not excepted to, should, if erroneous, be regarded, for the purposes of a motion for a new trial, as a misdirection, it can be sustained as correct, upon the broad ground that the letters were entitled to be received and considered as evidence in favor of Park. These letters were written from Park, at Salt Lake, to Baxter, in New York, in the course of a frequent correspondence between them, after the defendants had purchased their interests in the mine, and during the period when, upon the theory of the plaintiff, the defendants were engaged in manipulating the mine for the purpose of a fraudulent scheme which was consummated by the sale to plaintiff. The letters purported to convey information of what was transpiring at the time, advices of the developments, indications and value of the property, and suggestions as to future operations. It was conceded, upon the argument, that these letters would have been admissible as against Baxter, irrespective of the fact whether he had ever received them or not, as the declarations of a confederate, as verbal acts pending the criminal enterprise and in the accomplishment of its objects. If this is correct, if they were admissible, not as admissions of a party to the record, and, therefore, competent against him, within one of the exceptions to the rule excluding hearsay, but as verbal acts, and, therefore, not hearsay at all, it would seem entirely clear that they were competent in favor of Park, to the same extent and in the same manner that proof of any acts or conduct on his part, indicative of good faith or inconsistent with a fraudulent purpose, would be competent. Declarations of one conspirator are admissible against another conspirator, only as part of the res gestae of the criminal enterprise, and, when declarations are admissible as res gestae, they are always admissible in favor of the party making them as well as against him. From their nature, they are evidence, though emanating from the party who seeks to use them for his own benefit. Fellowes v. Williamson, 1 Moody & M. 306; Atwood's Case, 4 City H. Rec. 91; Mezzara's Case, 2 City H. Rec. 113; Shenck v. Hutcheson, 2 N. C. Law Repos. 432; Taylor v. Church, 4 Seld. [8 N. Y.] 452. It is upon this rule that the character of the possession of real estate may be explained by the declarations of the possessor, the occupancy being the principal act, and the declarations accompanying it a part of the res gestae. Yet these declarations are evidence in favor of the party making them. Martin v. Simpson, 4 McCord, 262; Turpin v. Brannon, 3 McCord, 261. So, where letters were written by the defendant in respect to property which he claimed to hold as an agent of the government, they were received in evidence in his own favor, and the court said, that "his contemporaneous correspondence on the subject, in that character, with the American government, was certainly proper evidence to show the original nature and complexion of the facts in controversy." Bingham v. Cabbot, 3 Dall. [3 U. S.] 19, 39. Upon the same rule, letters written by the owners of a vessel to the master, giving instructions as to the objects and character of a voyage, are admissible as part of the res gestae, in their own favor, to disprove an unlawful enterprise. U. S. v. Libby [Case No. 15,597]. An interesting case illustrating the rule is Tompkins v. Saltmarsh, 14 Serg. & R. 275, where a gratuitous bailee, who sued for the loss of a deposit, was permitted to show his own letters and declarations to third persons, after the loss and prior to any claim made upon him, in support of the theory that the

money had been stolen from him, upon the ground that they were a part of the res gestae. Numerous other illustrations of the rule are furnished by the cases, but it is sufficient to refer to one only, that of Rex v. Whitehead, 1 Car. & P. 67, which is directly in point here, where the defendant, on trial for a conspiracy to defraud, was permitted to introduce letters written to him and by himself to an alleged confederate, for the purpose of showing that he believed the truth of the facts which it was charged he had fraudulently represented.

Having thus reached the conclusion that the motion for a new trial, in so far as it is predicated upon errors of law, cannot prevail, it only remains to determine whether the verdict of the jury should be set aside as contrary to the evidence, or because the charge of the judge, so far as it dealt with the evidence and theories of fact, was unjust to the plaintiff. The vast volume of evidence and the great length of the charge preclude an analysis or consideration of either in detail, although the great importance of the controversy demands and has exacted a careful re-examination of the whole case. After a thorough review of the evidence and of the charge, my conclusion is, that a case is not presented for a new trial, within any of the rules which authorize a verdict to be set aside. In hard actions, a new trial will not be granted, if the verdict be for the defendant, although against evidence; and actions where fraud is imputed are within this rule. Grah. N. Tr. 523. But, irrespective of the character of the action, a case is not presented here where the verdict is so manifestly against the weight of evidence as to raise a presumption of partiality or misapprehension on the part of the jury. Inasmuch as there was evidence on both sides, upon the several issues of fact, if there were a preponderance against the verdict, the court should not reverse the conclusions of the jury, in the exercise of that discretion which is a judicial and not an arbitrary one. It would be unfair to the defendants not to say, further, that the case presentd a fair question of fact for the jury to determine, depending upon the credibility of witnesses and the probabilities to be deduced from circumstantial evidence, and is not one where the intelligence or impartiality of their verdict can fairly be impugned.

I am unable to discover any fair ground for the complaint, that the drift of the charge was adverse to the plaintiff, and that the comments on the evidence were calculated to mislead the jury in their consideration of the facts. The charge must be judged in its entirety and not in detached parts. After it has been dissected, it requires no astuteness on the part of counsel to discover parts which are obnoxious, when disconnected from the rest. That inaccuracies and omissions in the recapitulation of the testimony are to be found, is, doubtless, true; that theories and suggestions upon the facts were advanced, some of which could have been modified or qualified to meet other theories and suggestions fairly presented by the testimony, is, also, doubtless, true; but, in view of the great length of the trial, the vast mass of oral and documentary evidence to be considered, and the unusual number and variety of the issues of fact, primary and collateral, involved, it is hardly to be expected that a presentation of the case could be made, that would not, in some respects, be inadequate or inaccurate. These inaccuracies were not challenged at the time, none of them, in my present judgment, were serious ones, the prominent issues in the case were quite carefully enforced upon the consideration of the jury, and, as a whole, the charge was a fair and careful presentation of the case.

In conclusion, it is proper to say, that the evidence discloses many circumstances connected with the sale of the Emma mine, which strongly impeach the honor and morality of the transaction, but which are to be eliminated from the case, except so far as they bear upon the question of fraud in law. The controversy, in the form and forum in which it was brought, and upon the evidence adduced, resolved itself into the naked issue, whether or not the directors of the plaintiff were induced to purchase the mine by the fraudulent representations or concealments of the vendors regarding material facts. If the question had been, whether those individuals who became shareholders of the plaintiff, were led to invest their money in the company by fraud, or, if not by fraud, by instrumentalities which the law does not tolerate, a very different case would have been presented. Upon the issue tried, the plaintiff was given the benefit of a ruling which has never been advanced, to my knowledge, in any action at law, but which, however severe it may be upon the vendors, in the situation of these defendants, I have no doubt, is sound in principle, and was just in its application here. The jury were instructed, that, "inasmuch as the defendants were directors of the plaintiff at the time of the sale of the mine, and, for that reason, bound to exercise the utmost good faith in their dealings with their co-directors, a more rigorous rule should be applied, than that which obtains between vendor and vendee ordinarily. If, therefore, in the particulars detailed in the declaration, the defendants withheld from their co-directors any information as to material facts affecting the property, intending thereby that their co-directors should be misled, their conduct was actionable concealment, within the meaning of the law, if it operated to induce the purchase; and, to the extent that the plaintiff has sustained loss thereby, it is entitled to recover." Whether, under this instruction, the finding of the jury for the defendants was based on the theory, that the defendants honestly imparted to their co-directors all the information they possessed

relative to the property, which they deemed material to be known, or whether it was based on the theory that the directors relied, not on the good faith of the vendors, but upon their own investigations in reference to the property, is not material. Upon either theory, there was sufficient evidence to authorize the verdict, and, upon either theory, the plaintiff's cause of action failed.

The motion for a new trial must be denied.